UNITED STATES ex rel. STONY FORK COAL CO. et al. (UNITED STATES, Intervener) v. LOUISVILLE & N. R. CO. et al.

(Commerce Court, March 20, 1912.)

No. 57.

**1. CARRIERS (§ 32*)—FREIGHT—DISCRIMINATION.**

That carriers transport coal of other shippers from practically the same territory at the same rates to the same territory and at the same time refuse to carry petitioners' coal shows unjust discrimination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. § 32.*]

**2. COMMERCE (§ 89*)—COMMERCE COURT—JURISDICTION.**

The Commerce Court has no jurisdiction to consider a question of car distribution in advance of some action by the Interstate Commerce Commission, on complaint of a shipper who claims that connecting carriers discriminate against him in refusing to carry freight.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

**3. MANDAMUS (§ 141*)—COMMERCE COURT—JURISDICTION.**

Under Commerce Court Act (Act June 18, 1910, c. 309, 36 Stat. 539) § 1, subd. 4, giving that court jurisdiction of such mandamus proceedings as under Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 387) § 23, as amended by Act March 2, 1889, c. 382, § 10, 25 Stat. 862 (U. S. Comp. St. 1901, p. 3172), could be maintained in the federal Circuit Court, and under such section 23, authorizing mandamus against a carrier to avoid discrimination constituting a violation of the Interstate Commerce Act, etc., the Commerce Court has jurisdiction of a proceeding under section 23.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 276–278; Dec. Dig. § 141.*

Jurisdiction of federal courts of suits under Interstate Commerce Act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

**4. MANDAMUS (§ 133*)—FREIGHT—DISCRIMINATION.**

Under Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 387) § 23, as amended by Act March 2, 1889, c. 382, § 10, 25 Stat. 862 (U. S. Comp. St. 1901, p. 3172), authorizing mandamus against a carrier to avoid discrimination constituting a violation of the Interstate Commerce Act, §§ 3 and 7, and section 1 of the latter act, as amended by Commerce Court Act (Act June 18, 1910, c. 309, 36 Stat. 539) § 7, requiring carriers to provide equal transportation facilities on through routes at reasonable rates, etc., mandamus lies to compel connecting carriers who have established a through rate for carrying coal to carry petitioners' coal in such reasonable quantities as can be handled, though a dispute exists between the carriers as to which should furnish the cars, or as to what proportion of cars should be furnished by each.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 268; Dec. Dig. § 133.*

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce, see note to Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

Archbald and Mack, Judges, dissenting.

Mandamus proceedings, on the relation of the Stony Fork Coal Company, and others, against the Louisville & Nashville Railroad Company and another; the United States intervening. Writ allowed.

T. G. Anderson, for petitioners.

Blackburn Esterline, Sp. Asst. Atty. Gen., for the United States, intervener, in support of the jurisdiction of the court.

Albert S. Brandeis and William A. Northcutt, for Louisville & N. R. Co.

Alfred P. Thom and John K. Graves, for Southern Ry. Co.

Before KNAPP, Presiding Judge, and ARCHBALD, HUNT, CARLAND, and MACK, Judges.

CARLAND, Judge.   November 15, 1911, petitioners filed their petition in this court, praying for a writ or writs of mandamus directed to the respondents, commanding them and each of them to perform their duties as common carriers in the matter of the transportation of coal.   Upon the filing of the petition, an alternative writ of mandamus was ordered to issue by the court.   The alternative writ, however, was not issued, but, in place thereof, a copy of the order allowing the same was served on the respondents, together with an order to show cause, returnable December 5, 1911.   Each respondent answered the petition filed, and the case was subsequently heard upon the petition and the answers of respondents.

At the hearing, the Louisville & Nashville Railroad Company moved to dismiss the petition for want of jurisdiction.   Petitioners moved for judgment on the pleadings.   The following material facts appear therefrom:

The Stony Fork Coal Company, Ralston Coal Company, Monarch Coal & Coke Company, and Hignite Coal Mining Company own and operate coal mines in Bell county, Ky.   The Louisville & Nashville Railroad Company and the Southern Railway Company are common carriers engaged in the transportation of freight, including coal, from coal fields and coal mines on their lines of railroad in the state of Kentucky to stations and points in the states of Tennessee, North Carolina, South Carolina, Georgia, Alabama, Florida, and Mississippi, which said last-mentioned states are known for the purposes of transportation as Southeastern territory.

Middlesborough is a town in Bell county, Ky., in what is known as the Middlesborough district of the bituminous coal fields of Southeastern Kentucky.   The Stony Fork Coal Company owns and operates a coal mine about nine miles west of Middlesborough at a station or point known as Stony Fork.   The Ralston Coal Company owns and operates a coal mine about eight miles west of Middlesborough at a station or point known as Capito.   The Monarch Coal & Coke Company owns and operates a coal mine about seven miles west of Middlesborough at a station or point as Wilmont.   The Hignite Coal Mining Company owns and operates a coal mine about eight miles west of Middlesborough at a station or point known as Covert.

Eighty per cent. of the total output of said mines is sold in Southeastern territory.   Each respondent operates a line of railroad from Middlesborough to said territory.   The route to the said Southeastern territory over the line of the Louisville & Nashville Railroad from the petitioners' coal mines is so long and circuitous that said railroad com-

pany cannot compete in the handling of coal traffic with the shorter and direct route via the Southern Railway, and publishes no rates over its said route applicable to said coal traffic. Said company, however, owns and operates a line of railroad commonly known as the Middlesborough Railroad, extending from a point at or near its Middlesborough depot to Stony Fork Junction, a distance of about 2.98 miles, and from said junction up the Stony Fork of Yellow creek, a distance of about 7.83 miles, this line being known as the Stony Fork Branch. The Southern Railway has the right by contract to use the Stony Fork Branch line jointly with the Louisville & Nashville Railroad. The stations or points where the petitioners' mines are located are situated on said Stony Fork Branch, and are designated as points of origin in the tariffs hereinafter mentioned. The Louisville & Nashville Railroad Company has from time to time published joint and concurrent tariffs, and duly filed the same with the Interstate Commerce Commission as prescribed by law, establishing through routes and joint rates on coal from said stations or points on the Stony Fork Branch, viz., Stony Fork, Capito, Wilmont, and Covert, to stations or points in the various other states mentioned and designated as Southeastern territory. Said through route is via the Louisville & Nashville Railroad to Middlesborough, and thence via Southern Railway to points of destination; said joint tariff being only applicable to such through route. The Southern Railway Company has duly published and filed with the Interstate Commerce Commission, Southern Railway Company coal tariff 8—ICC—A—4500, effective October 15, 1911, in which said tariff the Louisville & Nashville Railroad Company is named as a participating carrier, and in which said last-named carrier has concurred according to law. Said Southern Railway tariff 8—ICC—A—4500 names the points or stations where petitioners' mines are located as points of origin for the shipment of coal, and said tariff advertises to the world that said Southern Railway will transport coal from said points of origin to Southeastern territory for the rates therein mentioned.

The Southern Railway Company contends that it is under no obligation as a common carrier or otherwise to furnish transportation at the points of origin mentioned, or with respect to shipments over the Stony Fork Branch to Middlesborough, because it is not the initial carrier, and admits that it has not furnished, and will not furnish, cars to the petitioners at such points, unless compelled to do so by competent authority. The Louisville & Nashville Railroad does not acknowledge any legal or moral obligation to furnish cars or transportation to the petitioners for the shipment of coal from the points above mentioned to Southeastern territory for the reason that it only performs a switching service for the Southern Railway in transporting coal from said points of origin to Middlesborough, and refuses to transport the coal of petitioners further than to Middlesborough. By reason of this dispute between the carriers, the petitioners are deprived of the means of transporting their coal to the Southeastern territory, and their business is destroyed save for a comparatively small amount of local shipments to local Kentucky points.

Petitioners have repeatedly requested respondents to transport their

coal to Southeastern territory, but said requests have been continually refused, and by reason thereof petitioners have been obliged to cancel all orders for coal from said territory, and are now excluded from the systems of both respondents and placed in the position with respect to said Southeastern territory of being on no railroad line whatever, instead of having the use and benefit of two railroads, or at least one.

[1] It is alleged in the petition that respondents are, and each of them is, receiving freight, including coals, and transporting the same from all other stations and points and for all other shippers and mines in Bell county, Ky., to said Southeastern territory.  For the purpose of petitioners' case, it is not necessary that said allegations be wholly established.  We think it sufficient to show discrimination if it appears that respondents are transporting coal of other shippers from practically the same territory at the same rates to Southeastern territory, and at the same time are refusing to transport the coal of petitioners.

It is true that the foregoing allegation is denied in the answers of respondents, but we think the denial, so far as the transportation of coal is concerned, is destroyed by the fact that it appears from the admissions in the answers that both respondents are shipping coal from other mines in Bell county to the Southeastern territory.  Especially is this true when it appears from the record that respondents are operating jointly the line of road known as Bennett's Fork Branch, running up Bennett's Fork of Yellow creek from Stony Fork Junction.

Briefly stated, the case made by the petitioners is this:  They own and operate coal mines located upon the line of the Louisville & Nashville Railroad, known as the Middlesborough Railroad, which extends to Middlesborough, Ky.  The Southern Railway Company owns a line of road running from Middlesborough to the so-called Southeastern territory, and has the right to operate the Stony Fork Branch of the Middlesborough Railroad.  The Southern Railway has filed with the Interstate Commerce Commission and published according to law a joint tariff and established through routes from the points on the Middlesborough road, where petitioners' mines are located, to Southeastern territory.  The Louisville & Nashville Railroad has concurred in the tariff and through route established by the Southern Railway, and is named in said tariff as a participating carrier.  Said carriers transport coal from other mines and for other shippers in Bell county, located in practically the same territory as those of the petitioners, to Southeastern territory.

In this condition of affairs the Louisville & Nashville Railroad refuses to move and transport the coals of the petitioners to Southeastern territory for the reason that in connection with the traffic mentioned it simply performs a switching service, and that it is not its duty to furnish cars for any greater distance than to transport the coal to Middlesborough.  The Southern Railway Company refuses to transport the coals of petitioners for the reason that it is not the initial carrier, and therefore is not obligated to send its cars up to the points where are located the petitioners' mines to there receive

the coal, and that its whole duty is performed when it furnishes the cars at Middlesborough.

But the petitioners are not interested in this dispute between the carriers except in so far as it prevents them from having their coal transported, and only ask that these common carriers, having established through routes and joint rates from petitioners' mines to Southeastern territory, shall perform their duty as such common carriers and move the coals of the petitioners in interstate commerce.

[2] This court has no jurisdiction to consider the question of car distribution in advance of some action by the Interstate Commerce Commission, or to determine how many cars the Southern Railway shall furnish, or how many the Louisville & Nashville Railroad shall furnish, for the transportation of the petitioners' coal. It is believed, however, that this court has the undoubted jurisdiction upon the facts presented by the record to issue a writ or writs of mandamus directed to these common carriers, commanding them that, so long as they establish and maintain through routes and joint rates to Southeastern territory, they shall move and transport in interstate commerce the coals of the petitioners when tendered in such reasonable quantities as may be determined either by agreement with the carriers or by the Interstate Commerce Commission if they cannot agree.

[3, 4] We will now consider the objections made to our jurisdiction to grant any relief under the facts stated, and also as to what relief shall be granted if we have jurisdiction.

At the inception of this case the Attorney General of the United States did not take part therein. Subsequently he was allowed to intervene in behalf of the petitioners. If there was an allegation of the petitioners that the application was now made by the Attorney General for a writ or writs of mandamus against the respondents at the request of the Interstate Commerce Commission, we would have authority to grant such writ or writs if the facts should warrant us in so doing, under section 20 of the act to regulate commerce. This section only requires proof of a violation of some provision of said act.

In the absence, however, of any showing that the application is now made by the Attorney General at the request of the Interstate Commerce Commission, we must act, if at all, under section 23 of the act. By subdivision 4 of section 1 of the act creating this court, we are given jurisdiction of "all such mandamus proceedings as under the provisions of section 20 or section 23 of the act entitled 'An act to regulate commerce,' approved February 4, 1887, as amended, are authorized to be maintained in the Circuit Court of the United States."

Section 23 of the act, as amended by Act March 2, 1889, c. 382, § 10, 25 Stat. 855 (U. S. Comp. St. 1901, p. 3172), so far as material, reads as follows:

"The Circuit and District Courts of the United States shall have jurisdiction, upon the relation of any person or persons, firm or corporation, alleging such violation by a common carrier of any of the provisions of the act to which this is a supplement, and all acts amendatory thereof, as prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged or upon terms or conditions as favorable as those given by said common carrier for like traffic under similar conditions

to any other shipper, to issue a writ or writs of mandamus against said common carrier to move and transport the traffic or to furnish cars or other facilities for transportation for the party applying for the writ."

This section not only requires that there must be some violation of the act to regulate commerce, but this violation must be one which prevents the relator from having interstate traffic moved by said common carrier at the same rates as are charged or upon terms and conditions as favorable as those given by said common carrier for like traffic under similar conditions to any other shipper. In other words, the violation of the act to regulate commerce on the part of the carrier must be such a violation as will amount to discrimination.

By section 1 of the act to regulate commerce as amended June 18, 1910, it is provided as follows:

"The term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all service in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto, and to provide reasonable facilities for operating such through routes, and to make reasonable rules and regulations with respect to exchange, interchange, and return of cars used therein, and for the operation of such through routes, and providing for reasonable compensation to those entitled thereto."

Again by section 3 of the act it is provided:

"Every common carrier subject to the provisions of this act shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith."

By section 7 of the same act it is also provided.

"That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any combination, contract, or agreement, expressed or implied, to prevent, by change of time schedule, carriage in different cars, *or by other means or devices*, the carriage of freights from being continuous from the point of shipment to the place of destination."

Considering the above provisions of the act to regulate commerce as applied to the facts in this case, it cannot be doubted that the respondents are violating some, if not all, of those provisions. It also necessarily follows that such violation is preventing the petitioners from having interstate traffic moved by respondents upon terms or conditions as favorable as those given by said respondents for like traffic under similar conditions to any other shipper.

It is objected that we may not issue a writ or writs of mandamus in this case, for the reason that the refusal to transport the coals of petitioners at all is not such a discrimination as is contemplated by the language of section 23, and that in order to come within the purview of said section the carrier must be actually transporting interstate traffic, but not upon terms or conditions as favorable to one shipper as are given to another shipper for like traffic under similar condi-

tions. We believe that this is placing too narrow a construction upon said section. We believe that if respondents are carrying the coals of other shippers from the immediate territory adjoining the petitioners' mines to Southeastern territory, and at the same time are refusing to carry the coals of the petitioners at all, they have not only violated the provisions of the Interstate Commerce Act, but such violation prevents the petitioners from having their interstate traffic moved by respondents upon terms or conditions as favorable as those given by said respondents for like traffic under similar conditions to other shippers.

It would lead to an absurd result if the court should be obliged to hold that discrimination might exist if respondents were charging other shippers 50 cents a ton for the transportation of coal to Southeastern territory and at the same time were charging petitioners $1 a ton for the same service, and yet there would not be discrimination if respondents refused to transport the coal of petitioners at all, for any price.

This court is not now concerned with the arrangements which respondents may make for the transportation of petitioners' coal as between themselves. The determination of the question as to whether the Louisville & Nashville Railroad shall transport the coal of the petitioners to Middlesborough in cars of its own, there to be taken by the Southern Railway Company to points of destination in Southeastern territory, or whether the Southern Railway Company shall send its cars from Middlesborough up the Stony Fork Branch to be there loaded with the coals of petitioners, and thence transported over the Louisville & Nashville Railroad and the Southern Railway to points of destination in Southeastern territory, or whether the Louisville & Nashville Railroad shall ship the coals to Middlesborough from points of origin, there to be changed from the Louisville & Nashville cars to the cars of the Southern Railway, or as to the number of cars the Southern Railway Company may be compelled to furnish to petitioners for the transportation of coal, or the number of cars the Louisville & Nashville Railroad may be obliged to furnish for the same service, or the number of cars at which the mines of the petitioners shall be rated. These are questions, either for the agreement of respondents between themselves, or, failing in this, for the administrative action of the Interstate Commerce Commission.

This court is now simply dealing with the plain question of law as to whether the respondents, as common carriers subject to the provisions of the Interstate Commerce Act, may be compelled to perform a plain legal duty not involving any discretion on the part of the respondents, and in the absence of any legal excuse or justification for the respondents to refuse to transport in interstate commerce the coals of the petitioners. It is insisted, however, by counsel for the respondents, that by virtue of the decisions of the Supreme Court of the United States in Texas & Pacific Railway Company v. Abilene Cotton Oil Company, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, and Baltimore & Ohio Railroad Company v. Pitcairn Coal Company, 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292, this court is prevented from granting any relief of the nature prayed for

by the petitioners, for the reason that the jurisdiction, if any, to grant such relief is with the Interstate Commerce Commission.

We do not so understand the ruling in the cases cited. In the Pitcairn Case the Supreme Court, after holding that the United States Circuit Court could not issue mandamus in the matter of the distribution of cars, for the reason that this was an administrative duty devolving upon the Interstate Commerce Commission, said:

"This conclusion being in reason impossible, it must follow that, construing the provisions of section 23 in the light of and in harmony with the amendments adopted in 1906 [Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1909, p. 1149)] the remedy afforded by that section, in the cases which it embraces, must be limited either *to the performance of duties which are so plain and so independent of previous administrative action of the Commission as not to require a prerequisite exertion of power by that body*, or to compelling the performance of duties which plainly arise from the obligatory force which the statute attaches to orders of the Commission rendered within the lawful scope of its authority until such orders are set aside by the Commission or enjoined by the courts."

We are firmly persuaded that the facts in the case at bar clearly bring it within the limitation declared by the Supreme Court; the writ of mandamus being issued only to compel the performance of a plain legal duty, a function which the Interstate Commerce Commission could not exercise itself, nor could the Commission take any action that would aid us in the decision of the question of law arising on this record.

It is pertinent in this connection to inquire for what purpose did the respondents agree to establish a through route from the points of origin mentioned in the case at bar to the Southeastern territory, and in connection therewith file and publish a joint tariff over said through route for the transportation of coal. It was a clear holding out that such carriers would transport the coals of the petitioners over the route for the rates mentioned in the joint tariff, and so long as they shall maintain the tariff described as 8—ICC—A—4500, or a like tariff, the law will compel them to transport the coals of the petitioners. when tendered to them in such reasonable quantities as will enable the respondents to handle the same.

Petitioners desire their coals moved in interstate traffic over the route and to the points in Southeastern territory. They are not primarily concerned with just how the handling of this traffic may be arranged between the Louisville & Nashville Railroad and the Southern Railway. They do desire that the respondents shall be compelled to perform their plain legal duty and move in interstate commerce their coal. The Southern Railway seeks to excuse itself from transporting the cars of petitioners by asserting that it is not the initial carrier, and that when it filed and published coal tariff 8—ICC—A—4500 it was acting as an agent of the Louisville & Nashville Railroad, and did not pretend to say that it would transport the coals of petitioner except as a connecting carrier. The Louisville & Nashville Railroad Company seeks to excuse its refusal to transport the coals of the petitioners on the ground that it simply concurred in coal tariff 8—ICC—A—4500 as a participating carrier, and did not thereby intend to agree to transport the coals of the petitioners any further than to

perform a switching service, as it is termed, from the mines in question down to Middlesborough.

But the law as applied to the case overrides this dispute between the respondents as to who shall furnish the cars, or as to what proportion of cars shall be furnished by each, and says to the respondents: By your act in establishing a through route and joint tariff from points of origin on the Middlesborough Railroad, or the Stony Fork Branch of the same, to the Southeastern territory, you have placed yourselves in a position where you must transport the coals of the petitioners to said Southeastern territory regardless of your private disputes.

Believing, as we do, that the facts in this case show a refusal on the part of respondents to perform their plain legal duty in the premises, we are of the opinion that the motion to dismiss made by the Louisville & Nashville Railroad Company should be denied, and that a peremptory writ of mandamus should issue out of this court, directed to each of said respondents, commanding them, their officers, and agents, so long as they maintain Southern Railway coal tariff 8—ICC—A—4500, or any like tariff, to transport the coals of the petitioners from the points mentioned on the Stony Fork Branch of the Middlesborough Railroad to points of destination in the Southeastern territory when tendered by said petitioners in such reasonable quantities as can be handled by said respondents, and it is so ordered.

ARCHBALD and MACK, Judges, dissent.